UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLO BAY ENTERPRISE, INC.,

       Plaintiff,

v.                     Case No. 8:14-cv-1989-T-33TGW

TWO AMIGO RESTAURANT, INC.,
ET AL.,

       Defendants.
_____/

**ORDER**

    This matter comes before the Court in consideration of Plaintiff Carlo Bay Enterprise, Inc.'s (Carlo Bay) Motion for Entry of Default Judgment Against Defendants Phillip Lopez, William Lopez, and Two Amigo Restaurant, Inc. (Doc. # 18), filed on November 20, 2014. For the reasons that follow, the Court grants the Motion to the extent set forth herein.

**I.   Background**

    Carlo Bay is the owner and operator of Club Prana, a Latin-themed bar, nightclub, and restaurant in Ybor City. (Doc. # 1 at ¶ 9). In furtherance of this venture, Carlo Bay owns the federal and state service marks for CLUB PRANA. (Id. at ¶¶ 10, 13). Carlo Bay also owns the fictitious name "Club Prana," under which it operates its business. (Id. at ¶ 15).

Carlo Bay contends that Defendants used its "Prana" name in relation to their nightclub and restaurant – "Prana Restaurant & Lounge" – without authorization or permission from Carlo Bay. (Id. at ¶ 17). Carlo Bay avers that Prana Restaurant & Lounge "utilizes the same business model as that of Club Prana;" specifically, Prana Restaurant & Lounge is "a Spanish-themed bar, nightclub, lounge, and restaurant located in Sarasota, Florida, less than an hour away from Club Prana." (Doc. # 18 at 3). Carlo Bay submits that it sent Defendants two letters requesting that they cease and desist their "unauthorized use" of its "Prana" name. (Id.). Nevertheless, Defendants continued to operate Prana Restaurant & Lounge. (Id.).

On August 18, 2014, Carlo Bay initiated this action against Defendants for (1) trademark infringement, (2) contributory infringement, (3) false designation of origin, (4) common law unfair competition and trademark infringement, (5) trademark dilution under Florida law, (6) trademark infringement under Florida law, and (7) violation of the Florida Unfair Competition Act. (See Doc. # 1). Defendants failed to timely appear and respond in this action. As a result, on September 15, 2014, Carlo Bay applied for Clerk's entry of default against Two Amigo Restaurant. (Doc. # 9).

Thereafter, Carlo Bay applied for Clerk's entry of default against Phillip Lopez and William Lopez on September 19, 2014. (Doc. ## 11, 12). The Clerk entered default against all three Defendants on September 22, 2014. (Doc. ## 13-15). Carlo Bay filed the present Motion for Entry of Default Judgment on November 20, 2014. (Doc. # 18). The Court has reviewed the Motion and is otherwise fully advised in the premises.

## I.   Legal Standard

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). DirecTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. See Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a Court must ensure that there is a sufficient basis in the pleadings for

3

the judgment to be entered. Id. A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact and bars the defendant from contesting those facts on appeal. Id.

"Once liability is established, the court turns to the issue of relief." Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." Id.

## II.  Liability

### A.  Trademark Infringement under Federal and Florida law

Trademark infringement is proscribed by 15 U.S.C. § 1114(1)(a). That provision reads, in relevant part:

> (1) Any person who shall, without the consent of the registrant –
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

4

15 U.S.C. § 1114(1)(a). Thus, to succeed on a trademark infringement claim, a plaintiff must prove (1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive.[1] See Gen. Motors Corp. v. Phat Cat Carts, Inc., 504 F. Supp. 2d 1278, 1283 (M.D. Fla. 2006); Dieter v. B&H Indus. of S.W. Fla., Inc., 880 F.2d 322, 326 (11th Cir. 1989).

### i.   Trademark Validity and Unauthorized Use

Carlo Bay provides that it is the registered owner of the CLUB PRANA mark. (Doc. # 1 at 4, 7-8). Furthermore, Carlo Bay has produced a certificate of registration issued by the United States Patent and Trademark Office (Id. at 16), which serves as prima facie evidence of the validity of the registered mark and of Carlo Bay's ownership and exclusive right to use this mark in commerce. See 15 U.S.C. § 1057(b). Carlo Bay has also submitted a certificate of registration from the Florida Department of State for the CLUB PRANA mark. (Doc. # 1 at 17). In addition, Carlo Bay never consented to

---

[1]    "[T]he analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the trademark infringement claim." Gift of Learning Found., Inc. v. TGC, Inc., 329 F.3d 792, 802 (11th Cir. 2003) (internal citation omitted).

Defendants' use of the mark; in fact, Carlo Bay sent Defendants two letters requesting that they cease and desist their "unauthorized use" of its "Prana" name. (Id. at 28-39).

### ii. Likelihood of Confusion

"Proof of 'likelihood of confusion' is the *sine qua non* in actions for 15 U.S.C. § 1114 trademark infringement . . . ." Fila U.S.A., Inc. v. Kim, 884 F. Supp. 491, 494 (S.D. Fla. 1995). "Determination of likelihood of confusion requires analysis of the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products [or services] the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." Dieter, 880 F.2d at 326.

"Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law." Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000). In this case, Carlo Bay has sufficiently alleged that Defendants' Prana Restaurant & Lounge is likely to cause consumer confusion. (See Doc. # 1 at 13). In particular, with respect to the third factor, Carlo Bay alleges that Defendants operate a "Latin-themed restaurant, bar, lounge, and club, that uses the name

'Prana.'" (Doc. # 18 at 6). Carlo Bay submits that Defendants have intentionally used the "Prana" name "to deceive or confuse the public at large in [an] attempt to use Plaintiff's well established name and reputation." (Doc # 1 at 9). Thus, there is a strong likelihood of confusion in the present case because consumers may associate Plaintiff's Club Prana with the Prana Club and Restaurant operated by Defendants. See Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1182 (11th Cir. 1994).

In regard to the fourth factor, Carlo Bay further contends that both "establishments cater to the same clientele, which could lead consumers to believe that Defendants' establishment is related or affiliated to Carlo Bay's business." (Doc. # 18 at 6). Specifically, Carlo Bay submits:

> The use of said name, by Defendants, [has] caused massive confusion, mistakes and deception. Plaintiff's CLUB PRANA is a popular night club and restaurant in Tampa, FL that has been operating business for over 13 years. Defendants have and are marketing via radio stations, festivals, and facebook in Tampa and targeting patrons in the same marketing area as Plaintiff's CLUB PRANA. Patrons are highly confused and under the impression that Defendant's business is another location of Plaintiff's CLUB PRANA.

(Doc. # 1 at 13). This contention is supported by the fact that Carlo Bay's Club Prana is located in Tampa, Florida,

while Defendants' Prana Restaurant & Lounge is located less than an hour away in Sarasota, Florida. Therefore, the likelihood of confusion is apparent. See Babbit Elec., Inc., 38 F.3d at 1179 ("[A] likelihood of confusion can be found as a matter of law if the defendant intended to derive benefit from the plaintiff's trademark."). Accordingly, Carlo Bay has met its burden as to its claims for trademark infringement under Federal and Florida law.

**B.    Contributory Infringement**

In order to prevail on a claim for contributory infringement, there must be a "contribution to a direct trademark infringement or . . . a 'knowing participation' in a direct trademark infringement." Optium Tech., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1246 (11th Cir. 2007). In the present matter, Carlo Bay provides that Defendants Philip and William Lopez had notice of their infringing activities by way of the multiple cease and desist letters sent by Plaintiff. (Doc. # 1 at 6-7). It further alleges that, "as President and Vice President of Two Amigo, the Lopez's would have chosen to use the 'Prana' name thereby contributing to direct trademark infringement." (Doc. # 18 at 5; see Doc. # 1 at 9-10). Finally, Carlo Bay avers that Philip and William Lopez "acted in blatant disregard with knowledge

8

of their infringing activities." (Id.). Upon consideration, the Court finds that Carlo Bay has sufficiently alleged its claim for contributory infringement.

### C.   False Designation of Origin

"[A] false designation of origin claim . . . proscribes the behavior of 'passing off' or 'palming off,' which occurs when a producer misrepresents his own goods or services as someone else's." Custom Mfg. & Eng'r., Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (internal quotation omitted). "To establish a prima facie case under § 1125(a), a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." Id. As discussed above, the Court finds that Carlo Bay has sufficiently alleged both that it had enforceable trademark rights in the CLUB PRANA mark and that Defendants' unauthorized use is likely to lead to confusion. (See Doc. # 1 at 4-5, 13). Therefore, Carlo Bay has sufficiently pled a claim for false designation of origin.

### D.   Trademark Dilution under Florida Law

A plaintiff establishes a claim for dilution under Florida law where a designation resembles the highly distinctive mark of another in a manner likely to cause a

reduction in the distinctiveness of the other's mark or "tarnishes" the images associated with the other's mark. Great S. Bank v. First S. Bank, 625 So. 2d 463, 470 (Fla. 1993); see Fla. Stat. § 495.151. In making this determination, the court will look to the distinctiveness of the two services or products, the duration and extent of its use and advertising, and the degree of recognition by prospective purchasers. Id.

In its Complaint, Carlo Bay contends that "Defendants are using a name that resembles Plaintiff's CLUB PRANA and [are] advertising restaurant and club services which [are] the same registered services of Plaintiff's CLUB PRANA." (Doc. # 1 at 12). Carlo Bay further avers that Defendants' use of "Prana Restaurant & Lounge" is a "reproduction, copy and imitation" of Carlo Bay's mark. (Id.). As discussed above, Carlo Bay submits that "Plaintiff's CLUB PRANA is a popular night club and restaurant in Tampa, FL that has been operating business for over 13 years. Defendants have and are marketing via radio stations, festivals, and facebook in Tampa and targeting patrons in the same marketing area as Plaintiff's CLUB PRANA." (Id. at 13). Accordingly, the Court finds that these allegations establish that Defendants violated Fla.

Stat. § 495.151, and thus Carlo Bay prevails on its dilution claim.

### E.   Deceptive and Unfair Trade Practices

Finally, Carlo Bay asserts a claim against Defendants under Florida's Deceptive and Unfair Trade Practices Act. See Fla. Stat. § 501.201.  The Florida Legislature enacted the FDUTPA to protect against any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1); see also Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 256 (11th Cir. 2006). To state a claim under FDUTPA, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

In its Complaint, Carlo Bay states that Defendants' actions "constitute unfair methods of competition and unfair or deceptive practices" in violation of the Act. (Doc. # 1 at 13). Carlo Bay submits that, in turn, "Defendants' wrongful activities have caused . . . irreparable injury and other damage to Plaintiff's business, reputation and good will in its CLUB PRANA mark." (Id.). These allegations coupled with

those previously outlined establish that Defendants violated Fla. Stat. § 501.204.

## III. **Permanent Injunction**

"Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

"[I]n ordinary trademark infringement actions[,] complete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks. . . ." Id. at 1209. Furthermore, the Eleventh Circuit has noted that "[i]t is generally recognized in trademark infringement cases that (1) there is no[ ] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989) (quoting Processed

<u>Plastic Co. v. Warner Commc'ns</u>, 675 F.2d 852, 858 (7th Cir. 1982)).

Therefore, Defendants and their agents, officers, servants, employees, successors and assigns and all others acting in concert or in privity with Defendants are hereby enjoined from:

(1) Using, imitating and/or copying Plaintiff's CLUB PRANA mark and from imprinting, producing, marketing, selling, transporting, distributing, moving and/or otherwise circulating any and all services or products which bear Plaintiff's CLUB PRANA mark, or any colorable simulation or imitation thereof; and

(2) Using Plaintiff's CLUB PRANA mark or any colorable simulation or imitation thereof, in connection with any promotion, advertisement, display, sale or circulation of any services or products, which in any way might, could or does falsely relate or associate Defendants with Plaintiff.

## IV.  <u>Damages</u>

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default.  Rather, the Court determines the amount and character of damages to

be awarded." <u>Automobil Lamborghini SpA v. Lamboshop, Inc.</u>, No. 2:07-cv-266-JES-SPC, 2008 WL 2743647, at *2 (M.D. Fla. June 5, 2008) (internal quotation marks omitted). "If a default judgment is warranted, the court may hold a hearing for the purpose[ ] of assessing damages. However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages." <u>Id.</u> (internal citations omitted). The Court finds a hearing unnecessary to determine the appropriate amount of damages against Defendants because (1) the Court has sufficient record evidence to properly determine damages without a hearing and (2) Carlo Bay's requested damages are statutory.

The Lanham Act allows a plaintiff to elect to receive statutory damages for a defendant's infringement of a plaintiff's trademarks. <u>See</u> 15 U.S.C. § 1117(c). Generally, upon a plaintiff's election to receive statutory damages instead of actual damages, the Court can award statutory damages of not less than $1,000 or more than $200,000 per trademark infringed per type of goods sold, offered for sale, or distributed, regardless of willfulness, "as the Court determines to be just." <u>Rolex Watch USA, Inc. v. Lynch</u>, No. 2:12-cv-542, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013) (citing 15 U.S.C. § 1117(c)(1)). However, statutory damages

14

may be increased to not more than $2,000,000 per trademark infringed per type of goods sold, offered for sale, or distributed, if a defendant acts willfully. Id. (citing 15 U.S.C. § 1117(c)(2)).

In addition to the presumption raised by Defendants' default,[2] Carlo Bay has offered sufficient evidence demonstrating that Defendants' infringement was willful. Indeed, the Court finds, as did the Court in Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010), "it would be difficult for the court to conclude that the infringements were anything but willful." The establishment and online marketing of Defendants' Prana Restaurant & Lounge – resembling Carlo Bay's Club Prana in its theme and services – demonstrate the Defendants' intent "to trade off the reputation and good will that the plaintiffs . . . have established." Id.

Carlo Bay seeks an award of $2,000,000 against Defendants, noting that "Defendants have willfully, and without any regard for the rights of Carlo Bay, continued to infringe on the Registered Mark of Carlo Bay despite the

---

[2]   See PetMed Express, Inc. v. MedPets.com, Inc., 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) ("[T]he Court may infer willfulness from Defendants' default.").

issuance of multiple cease and desist letters." (Doc. # 18 at 13). As Carlo Bay correctly contends within its Motion, "[d]istrict courts have wide discretion in awarding statutory damages." PetMed Express, 336 F. Supp. 2d at 1219. "The statutory damage provision, § 1117(c), was added in 1995 because 'counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible.'" Id. at 1219-20 (quoting Tiffany Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)).

Regarding the amount of damages for each trademark infringed, the Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." Lynch, 2013 WL 2897939, at *5 (citations omitted). However, "[m]any courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c) in this situation." Id.

Under the Copyright Act, courts consider factors such as: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value

16

of the infringing material produced; and (7) the potential for discouraging the defendant." Id. (internal quotations and citations omitted); see also Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990) ("In its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed.").

In determining an appropriate award of statutory damages, the Court must strike a balance between permitting a windfall for the plaintiff and emphasizing to the defendant "that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade." Gucci America, Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 122-23 (S.D.N.Y. 2008); see also Rolls-Royce PLC, 688 F. Supp. 2d at 157 ("[W]hile it may exceed actual damages, an award of statutory damages does not constitute a windfall for prevailing plaintiffs.  It does, however, serve a punitive, deterrent function.") (internal citations omitted).

The Court finds Carlo Bay's request for $2,000,000 in statutory damages vastly inappropriate in this case. Although the Court believes that an award at the minimum level

would be insufficient here, some of the factors to be considered militate against an award at the maximum end of the spectrum. For instance, with regard to the second factor, "the revenues lost by plaintiff," it is unlikely that the Defendants' use of Carlo Bay's trademark caused Carlo Bay to suffer lost revenue anywhere near that amount. Additionally, with regard to the first factor, the Court is unconvinced that the "profits reaped" by Defendants total a number anywhere comparable to the $2,000,000 requested award. In fact, Carlo Bay has provided no documentation of profits reaped by Defendants or its own lost revenue. Finally, with regard to the third factor, Carlo Bay has produced no evidence regarding the value of its mark.

On the other hand, the Court is mindful that Defendants have chosen to default rather than to cooperate in providing particular records from which to assess the value of the infringing items produced. Additionally, as explained above, the Court finds that Defendants' infringing conduct was indeed willful. These considerations warrant an award above the statutory minimum.

After consulting numerous cases involving an award of damages for trademark infringement, the Court determines that an award of $30,000 per trademark infringed per type of good

offered for sale adequately compensates Carlo Bay in light of the relevant factors considered above.  The Court finds that such an award also accomplishes the objectives underlying the following relevant factors: "the deterrent effect on others besides the defendants" and "the potential for discouraging the defendant."  The Court is mindful that "[t]he statutory damages provision serves to sanction or punish defendants in order to deter future wrongful conduct."  WFTV, Inc. v. Maverik Prod. Ltd. Liab. Co., No. 6:11-cv-1923, 2013 WL 3119461, at *13 (M.D. Fla. June 18, 2013)(citing St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1204-05 (11th Cir. 2009)).  The Court is satisfied that statutory damages in the amount of $30,000 per trademark per type of good offered for sale, coupled with the injunctive relief previously ordered, will serve as a sufficient deterrent against any future wrongful conduct by Defendants.

For comparison, the Court has consulted the following cases: Automobil Lamborghini SpA, 2008 WL 2743647, at *7 (finding a statutory damages award of $700,000, representing $350,000 per infringing mark, to be appropriate in a case of willful infringement)); Rolls-Royce PLC, 688 F. Supp. 2d at 159 (awarding $1,000,000 in statutory damages for willful infringement, representing $25,000 x 2 marks x 20 types of

goods); <u>Rolex Watch USA, Inc. v. Lizaso-Rodriguez</u>, No. 1:11-cv-23986, 2012 WL 1189768, at *4 (S.D. Fla. Apr. 9, 2012) (awarding a total of $350,000 representing $50,000 per trademark for each of seven trademarks infringed where conduct was intentional and willful); <u>Lynch</u>, 2013 WL 2897939, at *6 (awarding a total of $800,000 representing $100,000 per trademark for each of eight trademarks infringed); <u>Malletier v. Carducci Leather Fashions, Inc.</u>, 648 F. Supp. 2d 501, 505 (S.D.N.Y. 2009) (awarding $100,000 for each of four trademarks infringed); <u>Ford Motor Co. v. Cross</u>, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (finding $100,000 to be an appropriate statutory damages award in a case of willful trademark infringement); <u>Gucci America</u>, 678 F. Supp. 2d at 122 (finding an award of "$3 million, or $200,000 per infringed mark . . . appropriate to accomplish the dual goals of compensation and deterrence"); <u>Bentley Motors Ltd. Corp. v. McEntegart, et al.</u>, No. 8:12-cv-1582-T-33TBM, 2012 WL 4458397, *6 (M.D. Fla. Sept. 26, 2012) (awarding $250,000 for each of two trademarks infringed).

Thus, based on the relevant factors discussed above and the circumstances of this case, the Court finds that statutory damages in the amount of $30,000 per trademark infringed per

type of good offered for sale, for a total amount of $30,000, is an appropriate, just, and reasonable award.

## V.   **Attorney Fees**

The Court declines to determine an appropriate amount of attorney fees at this juncture.  If Carlo Bay intends to file a motion for attorney fees in this matter, the Court directs Carlo Bay to do so on or before **December 22, 2014.**  Any such motion must be accompanied by a detailed fee ledger itemizing the hours worked in this case.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Plaintiff Carlo Bay Enterprise, Inc.'s Motion for Entry of Default Judgment Against Defendants Phillip Lopez, William Lopez, and Two Amigo Restaurant, Inc. (Doc. # 18) is **GRANTED** to the extent set forth herein.

(2)   The Clerk is directed to enter Judgment in favor of Plaintiff and against Defendants Phillip Lopez, William Lopez, and Two Amigo Restaurant, Inc., **in the amount of $30,000.**

(3)   If Plaintiff intends to file a motion for attorney fees in this matter, Plaintiff is directed to do so on or before **December 22, 2014.** Any such motion must be

accompanied by a detailed fee ledger itemizing the hours
worked in this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>8th</u>
day of December, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record